IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2008 MAR -6  A 10: 06

RICHARD EDWARD FRYE and )
FRAUKE SHEPHARD-FRYE, )
)
Plaintiffs, )
)
v. )    CIVIL ACTION NO. CV-
)
ULRICH GMBH & CO. KG and )    3:08 CV 158 -
ULRICH MEDICAL, USA, INC., )
)
Defendants. )
)

## NOTICE OF REMOVAL

COMES NOW the Defendant Ulrich Medical USA, Inc. (hereinafter "Ulrich Medical

USA" or "Defendant"), and pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, as amended, files

this Notice of Removal in the action styled *Richard Edward Frye and Frauke Shephard-Fry v.*

*Ulrich GmbH & Co. KG and Ulrich Medical USA, Inc.*, CV-2008-900004, in the Circuit Court

of Macon County, Alabama to the United States District Court for the Middle District of

Alabama, Eastern Division.  In support thereof, Ulrich Medical USA states as follows:

### I.    GROUNDS FOR REMOVAL

1.    This law suit is a civil action within the meaning of the Acts of Congress relating

to removal of cases.

2.    On January 23, 2008, the Plaintiffs filed suit in the action styled *Richard Edward*

*Frye and Frauke Shephard-Fry v. Ulrich GmbH & Co. KG and Ulrich Medical USA, Inc.*, CV-

2008-900004, in the Circuit Court of Macon County, Alabama.

3.    Defendant Ulrich Medical USA, Inc. was served with the Summons and

Complaint by certified mail on February 8, 2008 (Exhibit A).  At the time of removal, the state

court records did not reflect service of process having been perfected on Ulrich Medical USA.

DOCSBHM\1542312\2\

4.      Defendant Ulrich GmbH & Co. KG (hereinafter "Ulrich GmbH") was improperly served with the Summons and Complaint by certified mail on February 8, 2008 (Exhibit A).[1]  At the time of removal, the state court records did not reflect service of process having been perfected on Ulrich GmbH.  Despite having been improperly served with a copy of the Summons and Complaint, Ulrich GmbH has appeared specially and for the limited purpose of consenting to and joining in Ulrich Medical USA's removal of this case.  To that end, contemporaneously herewith, Ulrich GmbH has filed its Joinder In Removal in connection with this Notice of Removal, which is within thirty (30) days of service on the first-served Defendant, Ulrich Medical USA.  By joining in and consenting to Ulrich Medical USA's removal, Ulrich GmbH does not waive its right to proper and legal service of process, nor does it consent to this Court's personal jurisdiction over it.

5.      Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within thirty (30) days after Defendant Ulrich Medical USA's receipt of the Summons and Complaint by via certified mail.

6.      Jurisdiction of this action is based upon 28 U.S.C. §§ 1332, 1441, and 1446, as amended.  This action is removable pursuant to 28 U.S.C. § 1441, which authorizes removal of any civil action brought in a state court in which the United States District Court for that district has original jurisdiction.  Moreover, this Court has original jurisdiction based upon diversity of

---

[1] Contemporaneously herewith, Ulrich GmbH has filed a Motion To Quash the Plaintiffs' attempted, but improper, service of process on it.  Not only did the Plaintiffs attempt to serve Ulrich GmbH with a copy of the Summons and Complaint at the wrong address and in the wrong country, but the Plaintiffs failed to serve Ulrich GmbH through the Hague Convention on Service Abroad on Judicial and Extra-judicial Documents in Civil or Commercial Matters (hereinafter the "Hague Convention").  *See* Fed. R. Civ. P. 4(f)(1), (h)(2); Ala. R. Civ. P. 4.4(1); *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988); Art. 2, 20 U.S.T. 361, I.I.A.S. 6638, 658 U.N.T.S. 163.

citizenship under 28 U.S.C. § 1332, and pursuant to 28 U.S.C. § 1441(b), because diversity of citizenship exists between the Plaintiffs and the Defendant, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. By filing this Removal, Ulrich Medical USA does not concede that this Court has personal jurisdiction over it.[2]

7.    Pursuant to 28 U.S.C. § 1446(a), a copy of all records and proceedings from the state court file, including a copy of all process, pleadings, and orders served upon the Defendant, is attached to this notice of removal as Exhibit "B" and incorporated herein by reference.

## II.    DIVERSITY OF CITIZENSHIP

8.    Upon information and belief, at the time of the commencement of this action, and at all times subsequent thereto, Richard Edward Frye was a resident of Dale County, Alabama (Exhibit B: Complaint, ¶1).

9.    Upon information and belief, at the time of the commencement of this action, and at all times subsequent thereto, Frauke Shepherd-Frye was a resident of Dale County, Alabama (Exhibit B: Complaint, ¶2).

10.    At the time of the commencement of this action and at all times subsequent thereto, Ulrich GmbH was a German corporation organized and existing under and by virtue of the laws of the Federal Republic of Germany with its principal place of business in Ulm, Germany (Exhibit B: Complaint, ¶3).

11.    At the time of the commencement of this action and at all times subsequent thereto, Defendant Ulrich Medical USA, Inc. was a Missouri corporation organized and existing under and by virtue of the laws of the State of Missouri, with its principal place of business in St.

---

[2] Contemporaneously herewith, Defendant Ulrich Medical USA has filed a Motion To Dismiss For Lack Of Personal Jurisdiction.

Louis, Missouri (Exhibit B: Complaint, ¶4).

## III.    AMOUNT IN CONTROVERSY

12.    The amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.

13.    The Plaintiffs seek unspecified damages allegedly arising from Mr. Frye's back injury, subsequent surgery, as well as other actual, consequential, and punitive damages, and from Mrs. Shepherd-Frye's purported loss of consortium (Exhibit B: Complaint, ¶¶ 18, 20, 47).

14.    When a plaintiff makes a demand for an unspecified amount of damages, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007).   The removing defendant may do this by showing that the required amount in controversy is clear from the face of the documents before the Court, or that the amount is readily deducible from the removal documents. *Lowery*, 483 F.3d at 1211.

15.    If the amount in controversy is not facially apparent from the complaint, the court looks to the notice of removal and any evidence submitted by the parties relevant to the amount in controversy at the time the case was removed. *Bankhead v. American Suzuki Motor Corp.*, 2008 WL 96095, *2 (M.D. Ala. 2008)(*citing Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001)).   The Eleventh Circuit has recognized that for removal purposes, "numerous types of documents" qualify as evidence of the amount in controversy, including correspondence exchanged between counsel such as (1) "settlement offers," (2) settlement "demand letters," and (3) an "email estimating damages. *See Lowery*, 483 F.3d at 1213 n.62; *Bankhead*, 2008 WL 96095, *3 (holding that plaintiff's initial settlement demand letter of $150,000 was admissible

evidence of amount in controversy for removal purposes); *Sanderson v. Daimler Chrysler Motor Corp.*, 2007 WL 2988222, * 1 (S.D. Ala. Oct. 9, 2007)(finding amount in controversy deducible from face of complaint where plaintiff claimed "serious and permanent disfigurement and scarring to her face and body" and that such damages would last a lifetime); *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002); *Addo v. Globe Life & Accid. Ins. Co.*, 230 F. 3d 759, 761 (5th Cir. 2000); *Rodgers v. Northwestern Mut. Life Ins. Co.*, 952 F. Supp. 325, 327-28 (W.D. Va. 1997); *Sunburst Bank v. Summit Accept. Corp.*, 878 F. Supp. 77, 80-81 (S.D. Miss. 1995); *Rahwar v. Nootz,* 863 F. Supp. 191, 192 (D.N.J. 1994).

16.    While the Plaintiffs have sought an unspecified amount of damages, it is clear that the amount in controversy far exceeds $75,000, exclusive of interest and costs.  First, Mr. Frye's actual, compensatory damages exceed $75,000, exclusive of interest and costs.  Specifically, Mr. Frye claims to have undergone surgery at Flowers Hospital in Dothan, Alabama, to remove the medical device at issue in this case (Exhibit B:  Complaint, ¶20).  In pre-suit correspondence between Mr. Frye's attorney and the Defendant's insurer, Mr. Frye's attorney stated the following:

> e)    Tricare paid the medical bills…**The bill from Flowers Hospital alone was $166,000**.

(Exhibit C, Affidavit of Bruce Holland, ¶¶6-7)(emphasis added).

17.    Second, Mr. Frye claims numerous, permanent damages that he has sustained and will sustain in the future as a result of his injuries.  Again, in pre-suit correspondence, Mr. Frye's attorney stated as follows:

> g)    The fusion that was performed [on Mr. Frye's back] may not hold.  If it does not, major problems will be encountered…**He can no longer work [in Special Operations] which will force early retirement**.

4) In addition to permanent injury, pain and mental anguish described above, Mr. Frye will lose his medical insurance once he retires. While it is difficult to determine the amount of **future medical expenses** resulting from the fractured device, **they are likely to be substantial**. Further...his physical condition will greatly restrict his ability to obtain work in the private sector.

(Exhibit C, ¶¶6-7)(emphasis added).

18.     Third, Mr. Frye's attorney made a settlement demand well in excess of the amount in controversy. In the same correspondence with Ulrich's insurer, Mr. Frye's attorney stated the following:

Mr. Frye would like to resolve the matter now without litigation and is willing to accept a lesser amount than he otherwise would to accomplish this. He has authorize[d] me to make a **settlement demand of $745,000.**

(Exhibit C, ¶¶6-7)(emphasis added).

19.     Under the well-settled Eleventh Circuit law, pre-suit correspondence by Mr. Frye's attorney demonstrates that the amount in controversy is far greater than $75,000, exclusive of interest and costs. Not only did Mr. Frye's attorney state, in writing, that Mr. Frye's actual medical expenses in this case are no less than **$166,000**, but also in the same correspondence, Mr. Frye's attorney made a settlement demand of **$745,000** (Exhibit C, ¶¶6-7). Likewise, Mr. Frye's attorney stated that Mr. Frye has sustained, and will sustain in the future, additional, significant damages, including loss of income, loss of health insurance, and future medical expenses. Under the well-settled law, this evidence demonstrates that the amount in controversy exceeds $75,000, exclusive of interest and costs. *See Lowery,* 483 F.3d at 1213; *Bankhead,* 2008 WL 96095, *5; *Sanderson,* 2007 WL 2988222, * 1.

20.     The evidence described above, when coupled with consideration of awards against product manufacturers in similar cases, demonstrates that this case exceeds the

jurisdictional minimum.[3] *See, e.g., Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1318 (11th Cir. 2000)(affirming jury award that was remitted from $6,000,000 in compensatory and punitive damages to $1,000,000 in compensatory damages from defective breast implants).

## IV.    CONCLUSION

21.    Because the parties to this action are completely diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs, this Court has jurisdiction over this action by virtue of 28 U.S.C. § 1332, 1441, and 1446, as amended.

22.    The Defendant has provided the Plaintiffs, by and through their counsel of record, with written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d). Further, the Defendant will cause a copy of this Notice of Removal to be timely filed with the Clerk of the Circuit Court of Macon County, Alabama, where the action was pending.

23.    If any question arises as to the propriety of the removal of this action, the Defendant requests the opportunity to present a brief and oral argument further supporting its position that this case is removable.

WHEREFORE, PREMISES CONSIDERED, Defendant Ulrich Medical USA, Inc. prays that this Court will take cognizance and jurisdiction of this cause and make any and all orders necessary to effect the removal of this cause from the Circuit Court of Macon County, Alabama to this Honorable Court.

---

[3] Although Alabama courts have recently avoided considering jury awards in similar cases as evidence of the amount in controversy, the Middle District of Alabama has found such comparisons proper when used in conjunction with evidence of the amount in controversy. *See Kennedy v. Fleetwood Enterprises, Inc.*, 2007 WL 4287374, *3 (M.D. Ala. Dec. 5, 2007) (considering both the property damages at issue and other Alabama jury verdicts for similar claims exceeding $75,000).

_____
JAMES B. CARLSON (ASB-7129-S78J)
CHRISTOPHER S. BERDY (ASB-4358-R68C)

Attorneys for Ulrich Medical U.S.A., Inc.

**OF COUNSEL:**

**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
Tel:     (205) 930-5100
Fax:     (205) 930-5101

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleading upon all counsel of record, by United States mail, postage prepaid, and properly addressed on this _5th_ day of March, 2008 as follows:

Jackson B. Harrison
The Harrison Firm, LLC
8425 Crossland Loop
Montgomery, Alabama 36117

_____
OF COUNSEL

# EXHIBIT "A"





**STATE OF ALABAMA**
**UNIFIED JUDICIAL SYSTEM**
**DAVID R. LOVE, JR.**
**Circuit Court Clerk**
P.O. Box 830723
Tuskegee, Alabama 36083
Phone: 724-2614



7007 0710 0003 2804 5082



ULRICH GMBH & CO. KG
225 CHESTERFIELD INDUSTRIAL PARK
ST. LOUIS, MO 63005





**STATE OF ALABAMA**
**UNIFIED JUDICIAL SYSTEM**
**DAVID R. LOVE, JR.**
**Circuit Court Clerk**
P.O. Box 830723
Tuskegee, Alabama 36083
Phone: 724-2614





7007 0710 0003 2804 5099



ULRICH MEDICAL USA, INC
225 CHESTERFIELD INUSTRIAL PARK
ST. LOUSI, MO 63005





USPS - Track & Confirm

Page 1 of 1

USPS Homepage

Home | Help | Sign In

Track & Confirm    FAQs

Track & Confirm

Search Results

Label/Receipt Number: 7007 0710 0003 2804 5099
Status: Delivered

Your item was delivered at 11:21 AM on February 8, 2008
in CHESTERFIELD, MO 63005.

Enter Label/Receipt Number.

Notification

Track & Confirm by email

Get current event information or updates for your item sent to you or others by email.

Site Map    Contact Us    Forms    Gov't Services    Jobs    Privacy Policy    Terms of Use    National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

USPS - Track & Confirm

| ☒ USPS Homepage | ☒ | | Home | Help | Sign In |

☒

Track & Confirm | FAQs

☒ Track & Confirm

☒ Search Results

Label/Receipt Number: 7007 0710 0003 2804 5082
Status: Delivered

Your item was delivered at 11:21 AM on February 8, 2008 in CHESTERFIELD, MO 63005.

Enter Label/Receipt Number.

☒ Notification

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.

Site Map    Contact Us    Forms    Gov't Services    Jobs    Privacy Policy    Terms of Use    National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

# EXHIBIT "B"

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | **COVER SHEET<br>CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number:<br>46-CV-2008-900004.00<br>Date of Filing:<br>01/23/2008 | ELECTRONICALLY FILED<br>1/23/2008 5:12 PM<br>CV-2008-900004.00<br>CIRCUIT COURT OF<br>MACON COUNTY, ALABAMA<br>DAVID LOVE, JR., CLERK |

## GENERAL INFORMATION

### IN THE CIRCUIT OF MACON COUNTY, ALABAMA
### RICHARD EDWARD FRYE ET AL v. ULRICH GMBH & CO. KG ET AL

**First Plaintiff:** ☐ Business  ☑ Individual  ☐ Government  ☐ Other          **First Defendant:** ☑ Business  ☐ Individual  ☐ Government  ☐ Other

## NATURE OF SUIT:

**TORTS: PERSONAL INJURY**

- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonnes
- ☑ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**

- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**

- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS  (cont'd)**

- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP-Contempt of Court
- ☐ CONT-Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND- Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD-Eviction Appeal/Unlawfyul Detainer
- ☐ FORJ-Foreign Judgment
- ☐ FORF-Fruits of Crime Forfeiture
- ☐ MSHC-Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB-Protection From Abuse
- ☐ FELA-Railroad/Seaman (FELA)
- ☐ RPRO-Real Property
- ☐ WTEG-Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP-Workers' Compensation
- ☐ CVXX-Miscellaneous Circuit Civil Case

**ORIGIN:**   F ☑ INITIAL FILING          A ☐ APPEAL FROM DISTRICT COURT          O ☐ OTHER

R ☐ REMANDED          T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT          _____

**HAS JURY TRIAL BEEN DEMANDED?**     ☑ Yes   ☐ No

**RELIEF REQUESTED:**     ☑ MONETARY AWARD REQUESTED   ☐ NO MONETARY AWARD REQUESTED

| **ATTORNEY CODE:**   HAR285 | 1/23/2008 5:11:19 PM | /s JACKSON HARRISON |

**MEDIATION REQUESTED:**     ☐ Yes   ☑ No   ☐ Undecided

| State of Alabama<br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | **SUMMONS**<br>**- CIVIL -** | **Case Number:**<br>46-CV-2008-900004.00 |
| --- | --- | --- |

### IN THE CIVIL COURT OF MACON, ALABAMA
### RICHARD EDWARD FRYE ET AL v. ULRICH GMBH & CO. KG ET AL

ULRICH MEDICAL USA, INC, 225 CHESTERFIELD INDUST., ST. LOUIS MO, 63005

NOTICE TO _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY JACKSON HARRISON

WHOSE ADDRESS IS 8425 CROSSLAND LOOP, MONTGOMERY AL, 36117 _____

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of    RICHARD EDWARD FRYE
   pursuant to the Alabama Rules of the Civil Procedure

| 1/23/2008 5:12:39 PM | /s DAVID LOVE, JR. | |
| --- | --- | --- |
| Date | Clerk/Register | By |

☑ Certified mail is hereby requested     /s JACKSON HARRISON _____
                                  Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____         _____
Date                                              Server's Signature

| State of Alabama<br>Unified Judicial System<br><br>Form C-34  Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br>46-CV-2008-900004.00 |
| --- | --- | --- |

**IN THE CIVIL COURT OF MACON, ALABAMA**
**RICHARD EDWARD FRYE ET AL v. ULRICH GMBH & CO. KG ET AL**

ULRICH GMBH & CO. KG, 225 CHESTERFIELD INDUST., ST. LOUIS MO, 63005

NOTICE TO _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY JACKSON HARRISON

WHOSE ADDRESS IS 8425 CROSSLAND LOOP, MONTGOMERY AL, 36117 _____

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of    RICHARD EDWARD FRYE
pursuant to the Alabama Rules of the Civil Procedure

| 1/23/2008 5:12:39 PM | /s DAVID LOVE, JR. | _____ |
| --- | --- | --- |
| Date | Clerk/Register | By |

| ☑ Certified mail is hereby requested | /s JACKSON HARRISON |
| --- | --- |
| | Plaintiff's/Attorney's Signature |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____                    _____
Date                                        Server's Signature

ELECTRONICALLY FILED
1/23/2008 5:12 PM
CV-2008-900004.00
CIRCUIT COURT OF
MACON COUNTY, ALABAMA
DAVID LOVE, JR., CLERK

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

| | | |
|---|---|---|
| RICHARD EDWARD FRYE and | ) | |
| FRAUKE SHEPHARD-FRYE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **CASE NO. CV-2008_____** |
| | ) | |
| ULRICH GMBH & Co. KG and | ) | **JURY TRIAL DEMANDED** |
| ULRICH MEDICAL USA, INC, | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

### I. PARTIES

COMES NOW Plaintiffs, RICHARD EDWARD FRYE and FRAUKE SHEPHARD-FRYE, by and through counsel and respectfully pleads and alleges as follows:

1.    Plaintiff, RICHARD EDWARD FRYE (Hereinafter called Frye), is an individual who is over the age of nineteen and resides in Dale County, Alabama. Frye is the Husband of Plaintiff FRAUKE SHEPHARD-FRYE.

2.    Plaintiff, FRAUKE SHEPHARD-FRYE (Hereinafter called Shephard-Frye), is an individual who is over the age of nineteen and resides in Dale County, Alabama. Shephard-Frye is the Wife of Plaintiff Frye.

3.    Defendant ULRICH GMBH & Co. KG (Hereinafter called GMBH), is a German entity whose address is Buchbrunnenweg 12, 89081 Ulm, Germany.

4.    Defendant ULRICH Medical USA, INC(Hereinafter called USA), is a Missouri corporation whose address is 225 Chesterfield Industrial Blvd., St. Louis, MO 63005.

## II. JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action pursuant to Ala. Code § 12-11-30(1).

6.    This Court has venue over this action pursuant to Ala. Code § 6-3-7(a)(1).

## III. FACTUAL ALEGATIONS

7.    Defendants, GMBH and USA, manufacture, market and sale a medical device known as an Anterior Distraction Device Plus (Hereinafter called ADD Plus).

8.    Defendants, GMBH and USA, market the medical device ADD Plus to United States Service Personnel around the world, even though the ADD Plus is not approved by the United States Food and Drug Administration for use in the United States.

9.    Defendants, GMBH and USA, marketed the medical device ADD Plus for use in medical procedures such as Cervical Stenosis, even though the uniform medical opinion is that if a patient should require surgery to correct Cervical Stenosis the standard medical procedure is to use a cadaver bone to fuse the spine rather than an artificial device such as the ADD Plus.

10.   On or about November 2, 2005 the Plaintiff, Frye, was diagnosed with Cervical Stenosis while serving in the United States Army in Germany.

11.   On or about January 23, 2006 the Plaintiff, Frye, was introduced to the medical device ADD Plus marketed by Defendants, GMBH and USA.

12.   On or about January 23, 2006 the Plaintiff Frye was assured by Defendants, GMBH and USA, by and through his medical physician Dr. E-M. Buchholz of the Euromed Clinic in Furth, Germany, that the ADD Plus was the best known device in the world to correct the disease known as Cervical Stenosis.

13.   On or about January 23, 2006 the Plaintiff Frye was assured by Defendants, GMBH and USA, by and through his medical physician Dr. E-M. Buchholz of the Euromed Clinic in Furth, Germany, that the ADD Plus was the uniform procedure to correct the disease known as Cervical Stenosis.

14.   On or about January 23, 2006 the Defendants, GMBH and USA, by and through his medical physician Dr. E-M. Buchholz of the Euromed Clinic in Furth, Germany, sold and implanted a defective ADD Plus in the Plaintiff to correct his medical condition known as Cervical Stenosis.

15.   The ADD Plus sold and implanted in the Plaintiff, Frye, by the Defendants, GMBH and USA, was a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer.

16.   The Defendants, GMBH and USA, are engaged in the business of selling the ADD Plus.

17.   The Plaintiff, Frye, did not receive any warnings at all about any possible defects with the ADD Plus.

18.   In early February 2007 the ADD Plus malfunctioned and broke while the Plaintiff Frye was pumping gas in Tuskegee, AL.

19.   On or about February 21, 2007 the Plaintiff was informed by medical diagnosis that the ADD Plus malfunctioned and broke even though it was implanted and used as the product was intended to be used when it was sold to the Plaintiff, Frye.

20. The Plaintiff, Frye, was underwent surgery at Flowers Hospital in Dothan, AL to remove the malfunctioned and broken ADD Plus and replace it with a cadaver bone that fused his spine.

### IV. CAUSES OF ACTION

**COUNT 1- ALABAMA EXTENDED MANUFACTURER'S LIABILITY DOCTRINE**

21.   Plaintiffs reallege all allegations and averments contained in paragraphs (1) through (20) as if fully set out herein.

22.   This action is brought pursuant to the Code of Alabama 1975 § 6-5-521.

23.   Defendants, GMBH and USA, are sellers engaged in the business of selling the medical device ADD Plus.

24.   Defendants, GMBH and USA, expected that the ADD Plus device would reach the Plaintiff, Frye, without substantial change form when it was sold.

25.   The ADD Plus did reach the Plaintiff, Frye, as the ultimate consumer without substantial change from when it was sold.

26.   Defendants, GMBH and USA, manufactured, designed and sold a defective product, the ADD Plus, which, because of its unreasonably unsafe condition, injured the Plaintiff, Frye, when the ADD Plus, substantially unaltered, was put to its intended use.

27.   Defendants, GMBH and USA, caused the Plaintiff, Frye, personal injury by manufacturing, designing and selling a defective product, the ADD Plus, which reached the Plaintiff, Frye, in an substantially unaltered and

unreasonably unsafe condition , and Plaintiff, Frye, used the ADD Plus according to its intended use.

WHEREFORE, Plaintiff, Frye, demands judgment against the Defendants, GMBH and USA, for all actual and consequential damages caused the Plaintiff, Frye, by the Defendants, GMBH and USA. Further, Plaintiff, Frye, demands judgment against Defendants, GMBH and USA, for punitive damages.

**COUNT 2-NEGLIGENCE**

28.  Plaintiffs reallege all allegations and averments contained in paragraphs (1) through (27) as if fully set out herein.

29.  Defendants, GMBH and USA, owed the Plaintiff, Frye, a duty of care not to cause him damage.

30.  Defendants, GMBH and USA, breached stated duty by selling the Plaintiff, Frye, as the ultimate consumer a defective product, the ADD Plus.

31.  Defendants, GMBH and USA, caused the Plaintiff, Frye, damage as a factual and proximate cause of stated breach of duty.

WHEREFORE, Plaintiff, Frye, demands judgment against the Defendants, GMBH and USA, for all actual and consequential damages caused the Plaintiff, Frye, by the Defendants, GMBH and USA. Further, Plaintiff, Frye, demands

judgment against Defendants, GMBH and USA, for punitive damages.

**COUNT 3-NEGLIGENT MISREPRESENTATION**

32.  Plaintiffs reallege all allegations and averments contained in paragraphs (1) through (31) as if fully set out herein.

33.  Defendants, GMBH and USA, negligently misrepresented to the Plaintiff, Frye, that the medical device ADD Plus was widely used to correct the disease of Cervical Stenosis.

34.  Defendants, GMBH and USA, negligently misrepresented to the Plaintiff, Frye, that the medical device ADD Plus was approved for use in the United States by the U.S. Food and Drug Administration.

35.  Plaintiff, Frye, believed stated misrepresentations of the Defendants, GMBH and USA, and relied on them to his detriment.

36.  Plaintiff, Frye, was factually and proximately caused to suffer damage because of the stated misrepresentations of the Defendants, GMBH and USA.

WHEREFORE, Plaintiff, Frye, demands judgment against the Defendants, GMBH and USA, for all actual and consequential damages caused the Plaintiff, Frye, by the Defendants, GMBH and USA. Further, Plaintiff, Frye, demands

judgment against Defendants, GMBH and USA, for punitive damages.

**COUNT 3-BREACH OF IMPLIED WARRANTY FOR A PARTICULAR PURPOSE**

37.  Plaintiffs reallege all allegations and averments contained in paragraphs (1) through (36) as if fully set out herein.

38.  Defendants, GMBH and USA, by implication warranted to the Plaintiff, Frye, that the ADD Plus was fit for a particular purpose, namely fit to treat and correct the disease of Cervical Stenosis.

39.  Defendants, GMBH and USA, breached stated implied warranty for a particular purpose because the ADD Plus sold and implanted in the Plaintiff, Frye, was unfit for the treatment of his disease Cervical Stenosis.

40.  Plaintiff, Frye, was factually and proximately caused to suffer damage because of the stated breach of the implied warranty for a particular purpose.

WHEREFORE, Plaintiff, Frye, demands judgment against the Defendants, GMBH and USA, for all actual and consequential damages caused the Plaintiff, Frye, by the Defendants, GMBH and USA. Further, Plaintiff, Frye, demands judgment against Defendants, GMBH and USA, for punitive damages.

**COUNT 4- BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

41.   Plaintiffs reallege all allegations and averments contained in paragraphs (1) through (40) as if fully set out herein.

42.   This action is brought pursuant to the Code of Alabama 1975 § 7-2-314.

43.   Defendants, GMBH and USA, by implication warranted to the Plaintiff, Frye, that the ADD Plus was merchantable.

44.   Defendants, GMBH and USA, breached stated implied warranty merchantability because the ADD Plus sold and implanted in the Plaintiff, Frye, was defective.

45.   Plaintiff, Frye, was factually and proximately caused to suffer damage because of the stated breach of the implied warranty of merchantability.

WHEREFORE, Plaintiff, Frye, demands judgment against the Defendants, GMBH and USA, for all actual and consequential damages caused the Plaintiff, Frye, by the Defendants, GMBH and USA. Further, Plaintiff, Frye, demands judgment against Defendants, GMBH and USA, for punitive damages.

**COUNT 5- LOSS OF CONSORTIUM**

46.  Plaintiffs reallege all allegations and averments contained in paragraphs (1) through (45) as if fully set out herein.

47.  Plaintiff, Sherphard-Frye, was factually and proximately caused to suffer loss of consortium because of the wrongful acts of the Defendants, GMBH and USA.

WHEREFORE, Plaintiff, Sherphard-Frye, demands judgment against the Defendants, GMBH and USA, for all actual and consequential damages caused the Plaintiff, Sherphard-Frye, by the Defendants, GMBH and USA.

### V.    PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiffs respectfully pray that this Court:

(a)  Assume jurisdiction over this action;

(b)  Empanel a jury to decide such triable issues as may exist in this case;

(c)  Grant to Plaintiff such relief to which it is entitled;

(d)  Make such award of costs, attorney's fees and expenses as may be permitted by law or equity.

Respectfully submitted this 23rd day of January, 2008.

/S/ JACKSON B. HARRISON
Jackson B. Harrison (HAR 285)
Attorney for Plaintiffs

/s/ DONALD R. HAARISON
Donald R. Harrison(HAR096)
Attorney for Plaintiffs


OF COUNSEL:
The Harrison Firm, LLC
8425 Crossland Loop
Montgomery, AL 36117
(334) 819-8920
(334) 819-8923 (fax)


125 West Columbus St.
Dadeville, AL 36853
(256)825-7393
(256)825-7813 Fax




**SERVE THE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:**

ULRICH GMBH & Co. KG
Buchbrunnenweg 12
89081 Ulm, Germany


ULRICH Medical USA, INC
Thomas J. Mitchell
754 Spirit 40 Park Drive
Chesterfield MO 63005





**STATE OF ALABAMA
UNIFIED JUDICIAL SYSTEM
DAVID R. LOVE, JR.
Circuit Court Clerk
P.O. Box 830723
Tuskegee, Alabama 36083
Phone: 724-2614**



7007 0710 0003 2804 5082

ULRICH GMBH & CO. KG
225 CHESTERFIELD INDUSTRIAL PARK
ST. LOUIS, MO 63005







**STATE OF ALABAMA
UNIFIED JUDICIAL SYSTEM
DAVID R. LOVE, JR.
Circuit Court Clerk
P.O. Box 830723
Tuskegee, Alabama 36083
Phone: 724-2614**



7007 0710 0003 2804 5099

ULRICH MEDICAL USA, INC
225 CHESTERFIELD INUSTRIAL PARK
ST. LOUSI, MO 63005





# EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| RICHARD EDWARD FRYE and | ) | |
| FRAUKE SHEPHARD-FRYE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | CIVIL ACTION NO. CV- |
| | ) | |
| ULRICH GMBH & CO. KG and ULRICH | ) | |
| MEDICAL, USA, INC., | ) | |
| | ) | |
| **Defendants.** | | |

## AFFIDAVIT OF BRUCE HOLLAND

| | |
|---|---|
| STATE OF CALIFORNIA | ) |
| COUNTY OF SANTA CLARA | ) |

Before me, the undersigned Notary Public for said County and said State, personally appeared Bruce Holland, who, after being duly sworn, testified as follows:

1.    My name is Bruce Holland.  I am over the age of nineteen (19) years, of sound mind, and I give this testimony based upon my personal knowledge.

2.    I am a Claims Specialist for Allianz Global Risks (hereinafter "Allianz").

3.    Pursuant to a written insurance agreement, Allianz Corporate & Specialty AG provides general and product liability insurance coverage for Ulrich Medical USA, Inc. and Ulrich GmbH & Co.

4.    On or about May 1, 2007, Mr. Frye's attorney, James H. Starnes, notified Ulrich Medical USA, Inc. and Ulrich GmbH & Co. in writing of a claim Mr. Frye was making for back injuries sustained as a result of one of Ulrich GmbH & Co.'s products.  Copies of Mr. Starnes' May 1, 2007, letters to Ulrich Medical USA, Inc. and Ulrich GmbH & Co. are attached hereto as Exhibits "1" and "2," respectively.

5.      Shortly thereafter, Allianz was notified of Mr. Frye's claims against Ulrich Medical USA, Inc. and Ulrich GmbH & Co.  Consequently, I began corresponding directly with Mr. Frye's attorney about these claims.

6.      On July 14, 2007, I sent Jim Starnes, who I understood to represent Michael Frye, an e-mail requesting additional information about Mr. Frye, his injuries, and his alleged damages.  I requested this information in response to Mr. Starnes' May 1, 2007, letters to Ulrich Medical USA, Inc. and Ulrich GmbH & Co.  A true and correct copy of my July 14, 2007, e-mail to Mr. Starnes is attached hereto as Exhibit "3."

7.      On August 10, 2007, I received an e-mail from Mr. Starnes.  I understood this e-mail to be in response to my July 14, 2007, e-mail to him requesting information about Michael Frye.  In his e-mail, Mr. Starnes stated that Michael Frye had undergone back surgery at Flowers Hospital in Dothan, Alabama and that the cost of the surgery alone exceeded $166,000.  Also in his e-mail, Mr. Starnes stated that he was authorized by Michael Frye to settle his claims against Ulrich Medical USA, Inc. and Ulrich GmbH & Co. for $745,000.  A true and correct copy of Mr. Starnes' August 10, 2007, e-mail to me is attached hereto as Exhibit "4."


        FURTHER THE AFFIANT SAYETH NOT.

_Bruce Holland_
Bruce Holland

**STATE OF CALIFORNIA**                    )
**COUNTY OF** ~~SANTA CLARA~~                )
                    Los Angeles

I, the undersigned, a Notary Public in and for said County and State, hereby certify that Bruce Holland, whose name is signed to the foregoing document and who is known to me, comes before me on this day and, being informed of the contents of such instrument, she executed the same voluntarily on the day the same bears date.

Under my hand and seal this 26 day of February 2008.

NOTARY PUBLIC

My Commission Expires: Oct 28, 2009

State of California
County of LOS Angeles
On Feb 26, 2008 before me, LAURA Tomlinson here insert name and title of the officer, personally appeared Bruce Holland who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature                    (Seal)

LAURA TOMLINSON
COMM. # 1616536
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Oct. 28, 2009

# EXHIBIT 1

LAW OFFICES
**JAMES H. STARNES**
POST OFFICE BOX 590003
BIRMINGHAM, ALABAMA 35259-0003

PHONE (205) 320-0800
FAX (205)320-0808
Email: jstarnes@mindspring.com

May 1, 2007

Mr. Merle Symes
ULRICH MEDICAL USA, INC.
225 Chesterfield Industrial Boulevard
Chesterfield, MO 63005-1201

Re:   Richard Frye

Dear Mr. Symes:

I represent Richard Frye, a member of the U.S. Army presently stationed at Fort Rucker, Alabama. This letter is to Advise Ulrich of the substantial claim Mr. Frye has as a result of a defective devise that was implanted in his cervical spine.
_↳ 4ws._

While stationed in Germany, Mr. Frye was diagnosed with spinal stenosis at C3-C7 by Army physicians at Landstuhl Medical Center. He was referred to a private neurosurgeon, Dr. Eva-Maria Buchholz, who performed a cervical fusion on January 23, 2006. An expandable cage was implanted with screw fixation at C# and C7. The hardware was manufactured by Ulrich.

Following the surgery, Mr. Frye did not have any significant improvement. He was transferred to Fort Rucker later in 2006 and was seen by physicians there. X-rays taken on February 21, 2007 showed that the Ulrich hardware had fractured. Mr. Frye was referred to neurosurgeons in Dothan, Alabama who recommended that the hardware be removed and the fusion be reconstructed. This surgery was performed on March 27, 2007 at Flowers Hospital in Dothan. I am enclosing medical records that describe this major operation.

It is clear that the Ulrich hardware was defective in design and manufacture. This defect has caused substantial damages to my client. While Mr. Frye is certainly willing and able to pursue litigation, he would prefer to resolve the matter without

resorting to the courts. Please advise if Ulrich desires to attempt to settle this matter at this point.

I look forward to hearing from you.

Sincerely,

James H. Starnes

JHS/kdt

Enclosures

cc: Richard Frye

# EXHIBIT 2

LAW OFFICES
**JAMES H. STARNES**
POST OFFICE BOX 590003
BIRMINGHAM, ALABAMA 35259-0003

PHONE (205) 320-0800
FAX (205)320-0808
Email: jstarnes@mindspring.com

May 1, 2007

Klaus Kiesel
Chief Executive Officer
Ulrich GmbH & Co. KG
Buchbrunnenweg 12
89081 Ulm
Germany

Re:   Richard Frye

Dear Mr. Kiesel:

I represent Richard Frye, a member of the U.S. Army presently stationed at Fort Rucker, Alabama. This letter is to advise Ulrich of the substantial claim Mr. Frye has as a result of a defective devise that was implanted in his cervical spine. I previously wrote Ulrich Medical USA and they stated I should direct this claim to you.

While stationed in Germany, Mr. Frye was diagnosed with spinal stenosis at C3-C7 by Army physicians at Landstuhl Medical Center. He was referred to a private neurosurgeon, Dr. Eva-Maria Buchholz, who performed a cervical fusion on January 23, 2006. An expandable cage was implanted with screw fixation at C# and C7. The hardware was manufactured by Ulrich.

Following the surgery, Mr. Frye did not have any significant improvement. He was transferred to Fort Rucker later in 2006 and was seen by physicians there. X-rays taken on February 21, 2007 showed that the Ulrich hardware had fractured. Mr. Frye was referred to neurosurgeons in Dothan, Alabama who recommended that the hardware be removed and the fusion be reconstructed. This surgery was performed on March 27, 2007 at Flowers Hospital in Dothan. I am enclosing medical records that describe this major operation.

It is clear that the Ulrich hardware was defective in design and manufacture. This defect has caused substantial damages to my client. While Mr. Frye is certainly willing and able to pursue litigation, he would prefer to resolve the matter without resorting to the courts. Please advise if Ulrich desires to attempt to settle this matter at this point.

I look forward to hearing from you.

Sincerely,

James H. Starnes

JHS/kdt

Enclosures

cc: Richard Frye

# EXHIBIT 3

-----Original Message-----
From: bholland@aic-allianz.com [mailto:bholland@aic-allianz.com]
Sent: Saturday, July 14, 2007 2:15 PM
To: jstarnes@mindspring.com
Subject: Richard Frye vs. Ulrich GmbH (Our file #: GPB049403)


Mr. Starnes:

This is to advise you that Allianz Germany has asked us to handle the above captioned
claim on behalf of its insured, UlrichGmbH.

I have received and reviewed your letter of May 1, 2007 to Merle Symes at Ulrich Medical
USA, Inc. It is my understanding that you have also made contact with UlrichGmbh and thus
I believe you are aware Ulrich Medical US is not involved in the manufacturing selling or
distribution of the anterior distraction device, which I understand is referred to as an
Expandable Cage.

In addition to your letter, I also reviewed the medical records that you enclosed from
Flowers Hospital, the hospital where your client underwent the additional posterior
cervical fusion at which time the aforementioned device was surgically removed.

The above material is all that I have and thus, as I am certain you can appreciate, I have
numerous questions relative to liability and damage issues and hopefully you can provide
this information to me. I noted that you and your client would prefer to resolve this
matter without having to file suit; Allianz Germany and I would also prefer to resolve
this matter without resorting to litigation. However, I will need to have the additional
information outlined below to enable Germany and I the opportunity to properly evaluate
your clients claim; with that said the following is what I would hope you will provide.

1) You have indicated in your letter of May 1, 2007 that the Ulrich hardware was
"defective in design and manufacture." Have you had the device inspected to ascertain the
cause of the fracture? Do you have any expert reports to support this position? Do you
have the device; if so where is it located and will you make it available for inspection
by our expert?

3

2)  As to the device, the reports detailing the surgery at which time the device was removed indicate that it was difficult to remove the device and the impression I got was that it may have been cut during the operation.
Is the device in the same condition as it was prior to its removal from your client's spine, or has it been altered or damaged?

3) As to your client's damages:

a)  I noted that your client was/is in the U.S. Army.  Is he still in the Army?  If not, when was he discharged and was the discharge necessitated as a result of the spinal stenosis?

b)  If he was discharged, was he employed at the time of the surgery?  If so, please provide documentation to support what he was earning at the time of the March 2007 surgery.

c)  Has your client returned to work or to duty and if so when?  If he has not returned to work/duty, when is it expected that he will be released to return to work?

d)  Please provide me with medical authorizations for all of the physicians and hospitals here in the U.S. and in Germany which treated your client.
My colleague in Germany will be obtaining the records in Germany.

e)  What are your client's medical bills to date?  Have they been paid by insurance?  Do you anticipate any lien?

f)  Clearly, one of the issues is the extent of your client's resultant damages.  You indicated in your letter of May 1, 2007 that after the surgery in Germany, your client did not have any significant improvement and presumably this is allegedly due to the fractured device.  What was the initial prognosis given by the doctors in Germany?  In this regard, what I am referring to was what did the doctors in Germany indicate would be his recovery period and what would be the anticipated result of that surgery?

g)  The next question follows the above.  What has your client's physicians advised as to his prognosis as a result of the March 2007 surgery?  What is the recovery period? How is he doing now?  Is he allegedly going to have problems as a result of the failed surgery in Germany?  What I am attempting to ascertain is specifics as to what are the resultant damages as result of the second surgery?

4)  In that you expressed an interest in resolving this matter without resorting to litigation, are you in a position to present any demand?
Obviously, this is the type of case which could end up being document intensive and thus, unless we can obtain the above information to enable us to evaluate this claim, then it will probably be necessary for us to retain counsel to assist us in reviewing and obtaining the numerous documents.  On the other hand, if you are in a position to make a reasonable demand, which can be supported by the above requested information, then maybe this matter can be resolved.  I do, however, want to emphasize that at this time neither Germany nor I have sufficient information to determine if the fracture to this device had anything to do with a defect in manufacturing etc.  Thus, I will look forward to your response as to the above.

Thank you for your cooperation.

Bruce Holland
Claims Specialist
Allianz Global Risks
2350 Empire Ave.
Burbank, Ca. 91504-3350
Direct Line:  (818) 260-7436
email: bholland@aic-allianz.com
Fax #: (818) 260-7203

4

# EXHIBIT 4

2350 Empire Ave.
Burbank, Ca. 91504-3350
Direct Line:  (818) 260-7436
email: bholland@aic-allianz.com
Fax #: (818) 260-7203
----- Forwarded by Bruce Holland/BUR/AIC/US on 08/10/2007 03:44 PM -----

<table>
<tr><td>"Jim Starnes"<br>&lt;jstarnes@mindspr<br>ing.com&gt;<br><br>08/10/2007 02:03<br>PM</td><td>&lt;bholland@aic-allianz.com&gt;</td><td>To<br><br>cc<br><br>Susp.Date</td></tr>
</table>

                         Subject
            RE: Richard Frye vs. Ulrich GmbH
            (Our file #: GPB049403)




Mr. Holland:

This is in response to your email of July 14, 2007. The numbered paragraphs below
correspond with those in your letter.

1)    The devise has been "inspected" by the doctors at Flowers Hospital who
operated on Mr. Frye. The devise fractured while in my client's spinal column less than
one year. The doctors say this was predictable based on the design and manufacture of the
device. We have not yet gone to the expense of retaining an engineer but we will if the we
cannot settle the claim. The device is in Alabama and we will make it available to you.

2)    I understand that the device is in substantially the same condition.

3a)   Mr. Frye continues to serve in the US Army as a CSM. His reenlistment comes up next
year and he planned to continue his service. However, because of problems associated with
the defective device and the subsequent surgery to remove it, he is not deployable and
will be unable to reenlist.

b)    N/A

c)    Mr. Frye returned to work a month after the surgery with a restricted
profile.

d)    We will get the records from Flowers and the Army and forward them to
you. We will also attempt to get the records from Germany.

e)    Tricare paid the medical bills. We do not know the exact amount but we
will get this. The bill from Flowers Hospital alone was $166,000. I do anticipate that
Tricare will claim a subrogation interest based on past experience.

f)    The German physician, Dr. Eva-Maria Buchholz, stated that Mr. Frye's
symptoms would resolve shortly after the surgery. She indicated that while any damage
caused by the stenosis would remain, there would be no progression. Instead, his cervical
spine became very unstable and his symptoms worsened substantially.

g)    The doctors in Dothan are not certain of the prognosis. The fusion
that
was performed may not hold. If it does not, major problems will be encountered.

Regardless, Mr. Frye has a fused cervical spine. The large screws furnished by Ulrich with the device caused a lot of damage to the bony structure of his spine. Mr. Frye's muscles have atrophied badly and he has limited use of his arm and hand. He is in constant pain. He has been in Special Operations all his life and always has been able to perform his duties. He no longer can which will force early retirement.

4)    In addition to the permanent injury, pain and mental anguish described above, Mr. Frye will lose his medical insurance once he retires. While it is difficult to determine the amount of future medical expenses resulting from the fractured device, they are likely to be substantial. Further, he will lose the job he loves within the next year and his physical condition will greatly restrict his ability to obtain work in the private sector.

I will again say Mr. Frye would like to resolve the matter now without litigation and is willing to accept a lesser amount than he otherwise would to accomplish this. He has authorize me to make a settlement demand of $745,000.

We will forward medical records to you as they are received. Please let me know if you need additional information. We look forward to receiving a response to our demand.

Jim Starnes

James H. Starnes            (205)320-0800
StarnesLaw LLC              (866)641-5255 (Fax)
P. O. Box 590003            (205)601-8614 (Cell)
Birmingham, AL 35259
jstarnes@mindspring.com




-----Original Message-----
From: bholland@aic-allianz.com [mailto:bholland@aic-allianz.com]
Sent: Saturday, July 14, 2007 2:15 PM
To: jstarnes@mindspring.com
Subject: Richard Frye vs. Ulrich GmbH (Our file #: GPB049403)


Mr. Starnes:

This is to advise you that Allianz Germany has asked us to handle the above captioned claim on behalf of its insured, UlrichGmbH.

I have received and reviewed your letter of May 1, 2007 to Merle Symes at Ulrich Medical USA, Inc. It is my understanding that you have also made contact with UlrichGmbh and thus I believe you are aware Ulrich Medical US is not involved in the manufacturing selling or distribution of the anterior distraction device, which I understand is referred to as an Expandable Cage.

In addition to your letter, I also reviewed the medical records that you enclosed from Flowers Hospital, the hospital where your client underwent the additional posterior cervical fusion at which time the aforementioned device was surgically removed.

The above material is all that I have and thus, as I am certain you can appreciate, I have numerous questions relative to liability and damage issues and hopefully you can provide this information to me. I noted that you and your client would prefer to resolve this matter without having to file suit; Allianz Germany and I would also prefer to resolve this matter without resorting to litigation. However, I will need to have the additional information outlined below to enable Germany and I the opportunity to properly evaluate your clients claim; with that said the following is what I would hope you will provide.

1)    You have indicated in your letter of May 1, 2007 that the Ulrich hardware was "defective in design and manufacture." Have you had the device inspected to ascertain the cause of the fracture? Do you have any expert reports to support this position? Do you have the device; if so where is it located and will you make it available for inspection by our expert?

3

2)  As to the device, the reports detailing the surgery at which time the device was removed indicate that it was difficult to remove the device and the impression I got was that it may have been cut during the operation.
Is the device in the same condition as it was prior to its removal from your client's spine, or has it been altered or damaged?

3) As to your client's damages:

a)  I noted that your client was/is in the U.S. Army.  Is he still in the Army?  If not, when was he discharged and was the discharge necessitated as a result of the spinal stenosis?

b)  If he was discharged, was he employed at the time of the surgery?  If so, please provide documentation to support what he was earning at the time of the March 2007 surgery.

c)  Has your client returned to work or to duty and if so when?  If he has not returned to work/duty, when is it expected that he will be released to return to work?

d)  Please provide me with medical authorizations for all of the physicians and hospitals here in the U.S. and in Germany which treated your client.
My colleague in Germany will be obtaining the records in Germany.

e) What are your client's medical bills to date?  Have they been paid by insurance?  Do you anticipate any lien?

f)  Clearly, one of the issues is the extent of your client's resultant damages.  You indicated in your letter of May 1, 2007 that after the surgery in Germany, your client did not have any significant improvement and presumably this is allegedly due to the fractured device.  What was the initial prognosis given by the doctors in Germany?  In this regard, what I am referring to was what did the doctors in Germany indicate would be his recovery period and what would be the anticipated result of that surgery?

g)  The next question follows the above.  What has your client's physicians advised as to his prognosis as a result of the March 2007 surgery?  What is the recovery period? How is he doing now?  Is he allegedly going to have problems as a result of the failed surgery in Germany?  What I am attempting to ascertain is specifics as to what are the resultant damages as result of the second surgery?

4)  In that you expressed an interest in resolving this matter without resorting to litigation, are you in a position to present any demand?
Obviously, this is the type of case which could end up being document intensive and thus, unless we can obtain the above information to enable us to evaluate this claim, then it will probably be necessary for us to retain counsel to assist us in reviewing and obtaining the numerous documents.  On the other hand, if you are in a position to make a reasonable demand, which can be supported by the above requested information, then maybe this matter can be resolved.  I do, however, want to emphasize that at this time neither Germany nor I have sufficient information to determine if the fracture to this device had anything to do with a defect in manufacturing etc.  Thus, I will look forward to your response as to the above.

Thank you for your cooperation.

Bruce Holland
Claims Specialist
Allianz Global Risks
2350 Empire Ave.
Burbank, Ca. 91504-3350
Direct Line:  (818) 260-7436
email: bholland@aic-allianz.com
Fax #: (818) 260-7203

4

```
DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602004185
Cashier ID: brobinso
Transaction Date: 03/06/2008
Payer Name: SIROTE AND PERMUTT PC
------------------------------------
CIVIL FILING FEE
 For: SIROTE AND PERMUTT PC
 Case/Party: D-ALM-3-08-CV-000158-001
 Amount:        $350.00
------------------------------------
CHECK
 Check/Money Order Num: 234495
 Amt Tendered:  $350.00
------------------------------------
Total Due:       $350.00
Total Tendered: $350.00
Change Amt:      $0.00

FRYE ET AL V. ULRICH GMBH & CO ET
AL
```