IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD EDWARD FRYE and<br>FRAUKE SHEPHARD-FRYE, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. CV 08-158 |
| | ) | |
| ULRICH GMBH & CO. KG and<br>ULRICH MEDICAL, USA, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

COMES NOW the Defendant Ulrich Medical USA, Inc. (hereinafter "Ulrich Medical

USA"), and appears specially, not to be construed as a general appearance in this litigation, for

the limited purpose of replying to the Plaintiffs' Response to the Defendant's Motion to Dismiss

for lack of personal jurisdiction.[1]  As grounds, Ulrich Medical USA states as follows:

**INTRODUCTION**

The Plaintiffs' claims arise out of and relate <u>not</u> to any events that occurred in Alabama,

but to events that took place exclusively in <u>Germany</u>: the design, manufacture, sale, distribution,

and implantation of the medical device at issue.  Despite the Plaintiffs' attempt to create the

impression of Ulrich Medical USA's "contacts" with the State of Alabama, the Plaintiffs have

nevertheless failed to demonstrate that this Court can exercise personal jurisdiction over Ulrich

---

[1] The Plaintiffs repeatedly note that Defendant Ulrich GmbH & Co. KG (hereinafter "Ulrich GmbH") has not objected to this Court's assertion of personal jurisdiction over it (Plaintiffs' Resp., ¶¶1, 7).  However, as indicated in the Plaintiffs' Response to Ulrich GmbH's Motion to Quash, the Plaintiff has failed to serve Ulrich GmbH with a copy of the Summons and Complaint via the Hague Convention on Service Abroad on Judicial and Extra-judicial Documents in Civil or Commercial Matters (hereinafter the "Hague Convention").

Medical USA.  What the Plaintiffs cannot deny is that all of Ulrich Medical USA's "contacts" (1) occurred <u>after</u> the design, manufacture, sale, implantation, and alleged failure of the medical device at issue; (2) were made solely in response to unilateral contacts initiated by the Plaintiffs; and, (3) occurred only by e-mail and telephone.  As set forth below, Ulrich Medical USA does not have sufficient minimum contacts with Alabama, and allowing the Plaintiffs to proceed against them "offend traditional notions of fair play and substantial justice."

## JURISDICTIONAL FACTS

## I.    ULRICH MEDICAL USA HAS NO CONTACTS WITH ALABAMA

Ulrich Medical USA is a Delaware corporation organized and existing under the laws of the State of Delaware (Exhibit A, Aff. of M. Symes, ¶3).  With its principal place of business in St. Louis, Missouri, Ulrich Medical USA was formed in January 2006 (Exhibit A, ¶¶4, 10). Ulrich Medical USA is a subsidiary of Ulrich GmbH and is Ulrich GmbH's exclusive distributor in the United States (Exhibit A, ¶5).

Ulrich GmbH is located in Ulm, Germany where it designs, manufactures, and distributes surgical spine systems and surgical instruments for implanting its systems (Exhibit A, ¶6). Ulrich Medical USA only distributes products for Ulrich GmbH that have been approved by the United States Food and Drug Administration ("FDA") (Exhibit A, ¶7).  Ulrich Medical USA does not design or manufacture any products (Exhibit A, ¶9).  The products and devices sold by Ulrich Medical USA are all designed and manufactured in Ulm, Germany by Ulrich GmbH (Exhibit A, ¶9).  Since its formation in 2006, Ulrich Medical USA has never maintained an office in Germany (Exhibit A, ¶11).

Ulrich Medical USA has no contacts with Alabama (Exhibit A, ¶13).  Ulrich Medical USA has never purposefully availed itself of any privilege, benefit, or protection afforded by the

laws of Alabama (Exhibit A, ¶23).   Ulrich Medical USA is not registered to do business in Alabama (Exhibit A, ¶22).

Ulrich Medical USA has no offices, factories, real or personal property, product inventory, bank accounts, post office boxes, or other assets of any kind in Alabama (Exhibit A, ¶14).  Ulrich Medical USA has no employees in Alabama (Exhibit A, ¶15).  Ulrich Medical USA does not have a distribution or sales network in Alabama (Exhibit A, ¶16).  Ulrich Medical USA has sold no products to any person or entity in Alabama (Exhibit A, ¶17).  Ulrich Medical USA has made no attempts to sell its products to any person or entity in Alabama (Exhibit A, ¶17).

Ulrich Medical USA does not have any customers in Alabama (Exhibit A, ¶18).   No employees of Ulrich Medical USA have traveled to Alabama for purposes of selling, marketing, distributing, or attempting to sell, market, or distribute its products in Alabama (Exhibit A, ¶19). Ulrich Medical USA has not advertised, or placed any advertisements, in Alabama (Exhibit A, ¶20).  Ulrich Medical USA has never been sued or brought suit in Alabama (Exhibit A, ¶21).

## II.    ULRICH MEDICAL USA HAD NO INVOLVEMENT WHATSOEVER WITH THE DESIGN, MANUFACTURE, SALE, DISTRIBUTION, OR IMPLANTATION OF THE MEDICAL DEVICE AT ISSUE

Plaintiff Richard Frye had a spinal surgical system called the "ADDplus" implanted in his back (Complaint, ¶14).  On January 23, 2006, Dr. E-M. Buchholz performed the procedure for implanting the ADDplus in Furth, Germany at the Euromed Clinic (Complaint, ¶14).

Ulrich Medical USA has no affiliation with or connection to the Euromed Clinic in Furth, Germany (Exhibit A, ¶25).  Dr. E-M. Buchholz is not, and never has been, an employee of Ulrich Medical USA (Exhibit A, ¶26).  Ulrich Medical USA did not implant the ADDplus system (Exhibit A, ¶30).

Ulrich Medical USA did not design, manufacture, sell, distribute, or warrant Mr. Frye's ADDplus (Exhibit A, ¶28). Ulrich Medical USA does not design, manufacture, sell, distribute, or warrant the ADDplus (Exhibit A, ¶27). Ulrich Medical USA has never designed, manufactured, sold, distributed, or warranted the ADDplus (Exhibit A, ¶27). Ulrich Medical USA has never employed anyone to sell the ADDplus in Germany (Exhibit A, ¶12).

The ADDplus system implanted in Mr. Frye was designed, manufactured, and distributed by Ulrich GmbH in Ulm, Germany (Exhibit A, ¶31). In connection with Ulrich GmbH's implantation of Mr. Frye's ADDplus, Ulrich Medical USA received no compensation or payment whatsoever (Exhibit A, ¶41).

The ADDplus system is not approved by the FDA (Exhibit A, ¶32). The ADDplus is not and never has been distributed in the United States, including Alabama (Exhibit A, ¶32).

## III.  ULRICH MEDICAL USA'S LIMITED E-MAIL AND TELEPHONIC CONTACTS WITH ALABAMA ARE UNRELATED TO AND OCCURRED AFTER ACCRUAL OF THE PLAINTIFFS' CAUSE OF ACTION

Mr. Frye claims that the ADDplus "malfunctioned" in February 2007 (Complaint, ¶¶18-19). As a result, Mr. and Mrs. Frye initiated contact with Ulrich GmbH in February or March 2007 (Plaintiffs' Resp., ¶9). Mr. Frye had back surgery on March 27, 2007, to explant his ADDplus (Complaint, ¶18).

In connection with Mr. Frye's surgery, Mr. and Mrs. Frye, as well as Mr. Frye's physicians, initiated contact with Ulrich GmbH to obtain information about removal of Mr. Frye's ADDplus (Plaintiff's Resp., ¶9). In response to inquiries initiated by the Frye's and Mr. Frye's physicians, from Ulm, Germany, Ulrich GmbH supplied Mr. Frye's physicians with specialized surgical instruments to explant the device (Exhibit A, ¶35).

Ulrich Medical USA did not ship or supply those surgical instruments to Alabama (Exhibit A, ¶36). Ulrich Medical USA did not receive any form of payment or remuneration for the physician's use of the instruments (Exhibit A, ¶36).

Since late January 2007, Helmut Schoenhoeffer, Ph.D. has been Ulrich Medical USA's Vice President of Business Development and Marketing (Exhibit A, ¶38). Dr. Schoenhoeffer has extensive knowledge regarding spine surgery and the implantation of spinal systems (Exhibit A, ¶38). In response to the Frye's inquiries to Ulrich GmbH in February or March 2007, Dr. Schoenhoeffer was asked to and did consult with Mr. Frye and his physicians (Exhibit A, ¶39).

In consulting with the Frye's and Mr. Frye's physicians for the March 27, 2007, surgery, Ulrich Medical USA received no payment or compensation whatsoever (Exhibit A, ¶41). No one from Ulrich Medical USA, including Dr. Schoenhoeffer, traveled to Alabama to assist with or consult on Mr. Frye's March 27, 2007, surgery (Exhibit A, ¶42).

In responding to the inquiries initiated by the Frye's and Mr. Frye's physicians, Ulrich Medical USA did not anticipate that it might or would be sued in Alabama (Exhibit A, ¶44). Ulrich Medical USA has only seven employees (Exhibit A, ¶45). Requiring Ulrich Medical USA and its limited staff to respond to discovery, to sit for depositions, and to otherwise defend itself in this suit in Alabama will be extremely disruptive to and burdensome on its operations and limited resources (Exhibit A, ¶45).

**ARGUMENT**

The plaintiff has the burden of establishing a prima facie case of personal jurisdiction over a non-resident defendant. *Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1268 (11th Cir. 2002). In determining whether a court can exercise personal jurisdiction over a non-resident defendant, the Eleventh Circuit follows a two-pronged analysis. *Meier,* 288 F.3d at 1269;

*Madara v. Hall,* 916 F.2d 1510, 1515-16 (11th Cir. 1990).

First, the plaintiff must demonstrate that the non-resident defendant has sufficient "minimum contacts" with the state so that under the circumstances, it is fair and reasonable to require the defendant to come into this state to defend the action; in other words, whether the defendant's actions satisfy the state's long-arm statute. *Id.*; Ala. R. Civ. P. 4.2. Second, if satisfied, the court must then determine whether the defendant has sufficient minimum contacts with the forum state such that the requirements of due process are met. *Meier,* 288 F.3d at 1276. This second prong is satisfied if the defendant had sufficient minimum contacts with the forum state and that the suit would not "offend traditional notions of fair play and substantial justice." *Madara,* 916 F.2d at 1516.

## I.    THE PLAINTIFFS HAVE FAILED TO ESTABLISH THAT ULRICH MEDICAL USA HAD "MINIMUM CONTACTS" WITH ALABAMA SUFFICIENT FOR THIS COURT TO EXERCISE JURISDICTION OVER IT

To qualify as minimum contacts, the defendant's contacts with the applicable forum must satisfy three criteria. *Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1546 (11th Cir. 1993). First, the contacts must be related to the plaintiff's cause of action or have given rise to it. *Vermeulen,* 985 F.2d at 1546. Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws. *Id.* Third, the defendant's conduct with the form must be such that the defendant should reasonably anticipate being haled into court there. *Id.*[2]

---

[2] For purposes of this motion, Ulrich Medical USA assumes that the Plaintiffs contend Ulrich Medical USA is subject to specific, not general, personal jurisdiction. As the U.S. Court has noted, specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-17 nn. 8&9 (1984). By contrast, general jurisdiction arises from a defendant's

**A.     The Plaintiffs Can Establish No Causal Connection Between Ulrich Medical USA's Contacts With Alabama And The Plaintiffs' Cause Of Action**

    **1.     There Is No Connection Between The Frye's Claims And Ulrich Medical USA's Purported Alabama Contacts**

When a claim arises out of or is related to a defendant's contacts with the forum, the court must consider the relationship among the defendant, the forum, and the litigation to determine whether the exercise of jurisdiction was consistent with due process. *Borg-Warner Accept. Corp. v. Lovett & Thorpe, Inc.,* 786 F.2d 1055, 1057 (11th Cir. 1986). The relatedness requirement ensures that the element of causation remains in the forefront of the due process investigation. *Harlow v. Children's Hosp.,* 432 F.3d 50, 62 (1st Cir. 2005). Because causation is central to the relatedness inquiry, in most cases, contacts coming into existence <u>after</u> the cause of action will not be relevant. *Harlow,* 432 F.3d at 62 (emphasis added).

Here, the Plaintiffs' cause of action neither arose out of nor is related to Ulrich Medical USA's limited contacts with Alabama. Specifically, the Plaintiffs' allege violation of the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), Negligence, Negligent Misrepresentation, Breach of Implied Warranties, and Loss of Consortium (Complaint, Counts 1-5). Each and every one of these claims arises out of events that occurred in Germany.

---

contacts with the forum that are unrelated to the cause of action at issue. *Helicopteros,* 466 U.S. at 414-17 nn. 8&9. The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state. *Consolidated Develop. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1292 (11th Cir. 2000).

Here, Ulrich Medical USA's limited Alabama contacts are neither systematic nor continuous and do not support this Court's assertion of general personal jurisdiction. Ulrich Medical USA has directed none of its business activities toward Alabama (Exhibit A, ¶¶13-23). Likewise, Ulrich Medical USA's limited Alabama contacts do not support this Court's exercise of specific personal jurisdiction over it because the Plaintiffs' claims neither arise out of nor relate to Ulrich Medical USA's contacts with Alabama solely by e-mail and telephone.

First, regarding the Plaintiffs' AEMLD, negligent design, and warranty claims, none of the facts giving rise to these claims occurred in Alabama, and certainly none of them involved Ulrich Medical USA's limited contacts with Alabama. Ulrich GmbH (not Ulrich Medical USA) designed, manufactured, and distributed the ADDplus in Ulm, Germany (Exhibit A, ¶31). Likewise, while in Furth, Germany on January 23, 2006, Mr. Frye learned about the ADDplus, and he underwent surgery to have the ADDplus implanted (Complaint, ¶14). Moreover, while in Furth, Germany, Mr. Frye presumably signed an informed consent document wherein he acknowledged understanding the potential risks associated with the implantation procedure.

However, the Plaintiffs have identified no facts demonstrating any connection between the AEMLD, negligent design, and warranty claims and Ulrich Medical USA's limited Alabama contacts. In fact, the only contacts that the Plaintiffs identified are telephonic and e-mail contacts that occurred after Mr. Frye's January 23, 2006, surgery and the alleged February 2007 "malfunction" of his ADDplus (Plaintiffs' Resp., Exhibits A-C; Complaint, ¶¶14, 18-20). However, none of these contacts demonstrate Ulrich Medical USA's involvement with the design, manufacture, distribution, sale, or implantation of Mr. Frye's ADDplus.

Second, regarding Mr. Frye's negligent misrepresentation claim, none of the facts giving rise to these claims occurred in Alabama. Specifically, the Plaintiffs concede that all representations regarding the qualities and performance of the ADDplus occurred on January 23, 2006, in Furth, Germany at the Euromed Clinic (Complaint, ¶¶11-13). Mr. Frye alleges that he relied on these representations, and as a result of them, he consented to undergoing surgery for implantation of the ADDplus system in Furth, Germany (Complaint, ¶¶14-15).

Again, absent from the Plaintiffs' Response is any evidence that the negligent

misrepresentation claim arises out of Ulrich Medical USA's contacts with Alabama.[3]  Instead, all

of the facts alleged by the Plaintiffs demonstrate that Mr. Frye's negligent misrepresentation

claim arose out of statements that allegedly took place on January 23, 2006, in Furth, Germany

(Complaint, ¶¶11-15).  Moreover, none of the evidence presented by the Plaintiffs demonstrates

that Ulrich Medical USA made any representations or warranties about the ADDplus to Mr. Frye

upon which he relied in selecting that device (Plaintiffs' Resp., Exhibits A-C).

      In short, the Plaintiffs' claims do not arise out of nor are they related in any way to

Ulrich Medical USA's contacts with Alabama.  Not only was Mr. Frye's ADDplus designed,

manufactured, sold, and implanted in Germany, but Ulrich Medical USA had no involvement in

any aspect of its design, manufacture, sale, or implantation (Exhibit A, ¶¶8,9,12,24-31).

### 2.    All Of Ulrich Medical USA's Contacts Occurred <u>After</u> Accrual Of The Frye's Cause Of Action

      When analyzing specific jurisdiction, the contacts considered must generally be limited to

those before and surrounding the accrual of the cause of action.  *Harlow,* 432 F.3d at 61; *Borg-*

*Warner Accept. Corp.,* 786 F.2d at 1062 (affirming defendant's motion to dismiss for lack of

personal jurisdiction where defendant's only contacts with forum occurred after breach of

contract and were unrelated to subject matter of contract); *see also Rhodes v. Unisys Corp.,* 170

Fed. Appx. 681, 685 (11th Cir. 2006)(affirming defendant's motion to dismiss for lack of

personal jurisdiction where defendant's e-mail contacts with forum occurred after alleged fraud

and suppression could have occurred and where e-mail was unrelated to plaintiff's claims).

      Here, in attempting to meet their heavy burden of establishing this Court's jurisdiction

---

[3] In connection with Mr. Frye's January 23, 2006, surgery, Ulrich Medical USA disputes that it made any representations to Mr. or Mrs. Frye regarding the qualities or performance of the ADDplus, or that it had any involvement whatsoever in that procedure.

over Ulrich Medical USA, the Plaintiffs have identified a total of eleven (11) telephonic and e-mail[4] contacts purportedly made by Ulrich Medical USA and Ulrich GmbH (Plaintiffs' Resp., Exhibits A-C). Of these eleven contacts, only seven (7) actually involved employees of Ulrich Medical USA. Moreover, only four (4) of these seven were actually even made by Ulrich Medical USA, as the other three (3) were initiated by Mr. Frye's physicians (Plaintiffs' Resp., Exhibits A-C).[5]

---

[4] Exhibit "C" to the Plaintiffs' Response appears to consist of, among other things, (1) a series of March 22-28, 2007, e-mails by and among Ulrich Medical USA, Ulrich GmbH, and Mr. Frye's physicians, and (2) shipping documents from Ulrich GmbH to Mr. Frye's physicians. None of these documents are authenticated, and it is unclear whether the e-mails even represent a complete and accurate set of correspondence by and among the authors and recipients.

[5]  In an apparent effort to increase the ostensible contacts Ulrich Medical USA had with Alabama, the Plaintiffs have attempted to attribute Ulrich GmbH's four (4) e-mail and telephonic contacts to Ulrich Medical USA, arguing that Ulrich Medical USA is "an agent or alter ego of Ulrich GmbH." (Plaintiffs' Resp., ¶7).

However, the Plaintiffs' contention that Ulrich Medical USA is Ulrich GmbH's agent or alter ego is unfounded in fact or law. The mere fact that one corporation owns all the stock of another corporation does not destroy the separate corporate entities. *Messick v. Moring,* 514 So. 2d 892, 895 (Ala. 1987). A parent corporation that owns all the stock of a subsidiary is not liable for the acts of its subsidiary, unless the parent corporation so controls the operation of the subsidiary as to make it a mere adjunct, instrumentality, or alter ego of the parent corporation. *Environmental Waste Control, Inc. v. Browning-Ferris Indus., Inc.,* 711 So. 2d 912, 914 (Ala. 1998)(outlining eleven factors courts should consider in evaluating degree of "control" parent exercises over subsidiary for purposes of alter ego analysis).

To establish that one party is the alter ego of another, one must show the following: (1) the dominant party must have complete control and domination of the subservient corporation's finances, policy, and business practices at the time of the transaction in question; (2) the control must have been misused by the dominant party; and, (3) the misuse of this control must proximately cause the harm complained of. *First Health, Inc. v. Blanton,* 585 So. 2d 1331, 1334-35 (Ala. 1991). Piercing the corporation veil is not a power to be exercised lightly. *Blanton,* 585 So. 2d at 1334.

Here, the Plaintiffs' evidence is devoid of any facts demonstrating that Ulrich GmbH so controlled Ulrich Medical USA, much less misused that control, as to render Ulrich Medical USA its "alter ego." (Plaintiffs' Resp., Exhibits A-C). Instead, the evidence before this Court demonstrates nothing more than the existence of a German corporation and manufacturer (Ulrich GmbH) and its U.S. subsidiary corporation (Ulrich Medical USA) responding to the Plaintiffs' unilateral inquiries about Mr. Frye's ADDplus system <u>after</u> its implantation and alleged failure

Importantly, none of Ulrich Medical USA's seven (7) telephonic and e-mail contacts occurred until after Mr. Frye's January 23, 2006, surgery and alleged February 2007 "malfunction" of his ADDplus (Complaint, ¶18-19). Instead, Ulrich Medical USA's contacts with Alabama bear no relevance to the Plaintiffs' claims concerning the design, manufacture, distribution, sale, or implantation of Mr. Frye's ADDplus.

**B.      Ulrich Medical USA Has Made No Effort To Direct Its Activities In Or Toward The State Of Alabama**

      **1.      Ulrich Medical USA Has No Contacts With The State Of Alabama That Would Subject It To This Court's Jurisdiction**

It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *Borg-Warner Accept. Corp.,* 786 F.2d at 1058. Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state. *Madera,* 916 F.2d at 1516. Although the concept of foreseeability is not irrelevant to this analysis, the kind of foreseeability critical to the proper exercise of personal jurisdiction is not the ability to see that the acts of third persons may affect the forum, but rather that the defendant's own purposeful acts will have some effect in the forum. *Id.* at 1516-17.

In determining whether a foreign defendant has purposefully availed itself to the forum, the U.S. Supreme Court has suggested consideration of the following four examples of "additional conduct" that might indicate the requisite intent to serve the forum: (1) designing the

---

(Plaintiffs' Resp., Exhibits A-C; Exhibit A). To conclude that this is evidence of Ulrich GmbH's "domination" and "control" over Ulrich Medical USA runs afoul of the well-settled Alabama law. *See Environmental Waste Control, Inc.,* 711 So. 2d at 914; *Blanton,* 585 So. 2d at 1334; *Messick,* 514 So. 2d at 895.

product for the market in the forum state; (2) advertising in the forum state; (3) establishing channels for providing regular advice to customers in the forum state; and, (4) marketing the product through a distributor in the forum state. *Vermeulen,* 985 F.2d at 1549-50 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Ct.,* 480 U.S. 102, 112 (1987)).

Here, Ulrich Medical USA has no contacts with Alabama that require its submission to this Court's jurisdiction. In fact, Ulrich Medical USA has no contacts with Alabama: Ulrich Medical USA has no offices, factories, real or personal property, product inventory, bank accounts, post office boxes, or other assets of any kind in Alabama; Ulrich Medical USA has no employees in Alabama; Ulrich Medical USA does not have a distribution or sales network in Alabama; Ulrich Medical USA has sold no products to any person or entity in Alabama; Ulrich Medical USA has made no attempts to sell its products to any person or entity in Alabama; Ulrich Medical USA does not have any customers in Alabama; no employees of Ulrich Medical USA have traveled to Alabama for selling, marketing, distributing, or attempting to sell, market, or distribute its products in Alabama; Ulrich Medical USA has not advertised in Alabama; Ulrich Medical USA has never been sued or brought suit in Alabama; and, Ulrich Medical USA is not registered to do business in Alabama (Exhibit A, ¶¶13-23).

Regarding the Supreme Court's "additional conduct" under the "purposeful availment" analysis, consideration of these factors likewise demonstrates that Ulrich Medical USA should not be subject to this Court's jurisdiction. First, the ADDplus (which Ulrich Medical USA neither designed nor manufactured) is designed neither for Alabama nor the United States, and in fact, it is not FDA-approved (Exhibit A, ¶¶31-32). Second, Ulrich Medical USA has conducted no advertising in Alabama (Exhibit A, ¶20). Third, Ulrich Medical USA has no channels for providing regular advice to customers Alabama, and in fact, it has no Alabama customers

distribution networks, sales personnel, or any employees at all in Alabama (Exhibit A, ¶¶13-23). Finally, Ulrich Medical USA has not conducted any marketing through a distributor in Alabama (Exhibit A, ¶¶8, 12, 16, 27-29).

In short, the Plaintiffs have failed to identify any affirmative conduct by Ulrich Medical USA toward Alabama. Not one of Ulrich Medical USA's seven contacts with Alabama was made in an attempt to enter into a commercial relationship with an Alabama resident (Exhibit A, ¶¶8, 11, 12, 17-20). Indeed, Ulrich Medical USA received no payment or compensation whatsoever from its Alabama contacts with the Frye's (Exhibit A, ¶41). Rather, all of Ulrich Medical USA's alleged Alabama contacts occurred in response to the Plaintiffs' unilateral inquiries about Mr. Frye's ADDplus and its alleged "malfunction." (Exhibit A, ¶¶34-40; Plaintiffs' Resp., Exhibits A-C).

### 2. Ulrich Medical USA's Contacts With Alabama Arose Out Of The Frye's Unilateral Inquiries From Alabama

The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. *Borg-Warner Accept. Corp.,* 786 F.2d at 1058. The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. *Sunbank, N.A. v. E.F. Hutton & Co.,* 926 F.2d 1030, 1034 (11th Cir. 1991)

Here, Ulrich Medical USA's limited Alabama contacts occurred solely in response to unilateral inquiries to Ulrich GmbH that the Plaintiffs initiated. After the alleged "malfunction" of Mr. Frye's ADDplus, Mr. Frye first contacted his Furth, Germany-based physician – Dr. E-M. Buchholz, thereafter contacting Ulrich GmbH and Ulrich Medical USA (Plaintiffs' Resp., ¶9). Had the Plaintiffs not initiated contact Ulrich GmbH, Ulrich Medical USA certainly would have had no knowledge whatsoever of Mr. Frye's alleged problems.

Moreover, Ulrich Medical USA's contacts with Alabama occurred solely because of Mr. Frye's transfer to Alabama's Fort Rucker. Had Mr. Frye been transferred to another U.S. Army facility in a different state, Ulrich Medical USA would have surely responded to the Frye's in that state as well. Therefore, the fact that Ulrich Medical USA had contact with Alabama is, at best, fortuitous. Ulrich Medical USA directed no commercial activities and previously made no contact with Alabama (Exhibit A, ¶¶13-23). In fact, Ulrich Medical USA received no payment from its consultation with the Frye's and Mr. Frye's Alabama physicians (Exhibit A, ¶41).

### 3. Because Ulrich Medical USA's Contacts With Alabama Occurred Solely By Telephone And E-mail, They Are Insufficient To Qualify As "Minimum Contacts"

The use of interstate facilities (i.e., telephone, mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the minimum contacts required by due process. *Borg-Warner Accept. Corp.*, 786 F.2d at 1059. The use of interstate telephone and mail service to communicate with a foreign plaintiff, if constituting contact supporting jurisdiction, would give jurisdiction to any state into which communications were directed. *Borg-Warner Accept. Corp.*, 786 F.2d at 1060.

Here, Ulrich Medical USA's contacts with Alabama occurred <u>exclusively</u> by e-mail and by telephone. In fact, the Plaintiffs identified no more than one (1) telephone call and six (6) e-mails involving Ulrich Medical USA (Plaintiffs' Resp., Exhibits A-C). Importantly, at no time did anyone from Ulrich Medical USA travel to Alabama to assist with or consult on Mr. Frye's March 27, 2007, surgery (Exhibit A, ¶¶19, 42).

### C. Ulrich Medical USA's Post-Event Contacts Were Insufficient For It to Reasonably Anticipate Being Haled Into Court In Alabama

The defendant's contacts with the forum must be such that it should reasonably anticipate being haled into court there. *Vermeulen*, 985 F.2d at 1546. Without this requirement, the

defendant has had no "clear notice that it is subject to suit" in the forum and thus no opportunity to "alleviate the risk of burdensome litigation" there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 n. 17 (1985). The Due Process Clause requires "fair warning" as to where individuals' conduct will subject them to suit, and for purposes of specific jurisdiction, this fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of and relate to those activities. *Burger King Corp.,* 471 U.S. at 472.

The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. *Sunbank, N.A.,* 926 F.2d at 1034. The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. *Borg-Warner Accept. Corp.,* 786 F.2d at 1058.

Here, Ulrich Medical USA could not have reasonably anticipated being haled into an Alabama court concerning the ADDplus. First, Ulrich Medical USA has made no attempts to purposefully direct conduct business in or otherwise avail itself to the privileges and benefits of the laws of Alabama (Exhibit A, ¶¶13-23). Moreover, Ulrich Medical USA did not even design, manufacture, sell, distribute, or implant Mr. Frye's ADDplus (Exhibit A, ¶¶9, 27-31). What is more, the Plaintiffs resided in Germany at the time of Mr. Frye's January 23, 2006, medical procedure (Complaint, ¶¶10, 14).

Instead, Ulrich Medical USA simply responded to the Plaintiffs' unilateral inquiries initiated from Alabama to Ulrich Medical USA's parent corporation in Germany (Exhibit A, ¶¶34-40). That Ulrich Medical USA responded to the Plaintiffs in Alabama was, at best, fortuitous. Ulrich Medical USA's contacts with Alabama occurred solely because of Mr. Frye's

transfer to Alabama. Had Mr. Frye been transferred to another U.S. Army facility in a different state, Ulrich Medical USA would have surely responded to the Frye's in that state as well.

Second, the Plaintiffs' claims in this case have no connection to Ulrich Medical USA's seven, limited Alabama e-mail and telephonic contacts. The telephone call and e-mails contain no evidence relating to the design, manufacture, or distribution of the ADDplus, nor do they contain any evidence of purported representations concerning the device. Instead, they all post-date the installation and alleged "malfunction" of Mr. Frye's ADDplus, and they were simply made in response to inquiries unilaterally initiated by the Frye's (Exhibit A, ¶¶34-40).

In short, Ulrich Medical USA has been sued because of random and fortuitous contacts with Alabama. Ulrich Medical USA's contacts with the Frye's were not the result of any activities it initiated in Alabama (Exhibit A, ¶¶13-23). Rather, Ulrich Medical USA's contacts with the Frye's occurred not because it purposefully availed itself of the privilege of conducting activities within Alabama, nor even because Ulrich Medical USA purposefully directed its activities at Alabama residents.

Instead, Ulrich Medical USA's contacts with the Frye's occurred because of the Plaintiffs' unilateral actions: Mr. Frye was transferred to Alabama, his ADDplus allegedly "malfunctioned" in Alabama, and he sought the advice of Ulrich Medical USA from Alabama (Complaint, ¶¶18-19; Plaintiffs' Resp.,¶9; Exhibit A, ¶¶34-40). If this Court were to find that it has jurisdiction over Ulrich Medical USA, it would have to do so solely as a result of "fortuitous, random, and attenuated contacts." *See Sun Bank, N.A.,* 926 F.2d at 1034 (reversing judgment against defendant where defendant's contacts with forum were fortuitous and solely because defendant's customer moved to forum). In short, Ulrich Medical USA lacks the requisite minimum contacts with Alabama necessary for this Court to assert personal jurisdiction over it.

## II.    EXERCISING JURISIDCITON OVER ULRICH MEDICAL USA VIOLATES DUE PROCESS BECAUSE DOING SO FAILS TO COMPORT WITH TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE

Even if a nonresident defendant possesses minimum contacts with the forum, the exercise of jurisdiction nevertheless violates due process unless it comports with traditional notions of fair play and substantial justice. *Vermeulen,* 985 F.2d at 1551. The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders. *Id.* In determining the fairness and reasonableness of a forum's exercise of jurisdiction, a court must consider, among other things (1) the burden on the defendant, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive policies. *Sun Bank, N.A.,* 926 F.2d at 1035.

Consideration of these factors mandates the conclusion that this Court lacks jurisdiction over Ulrich Medical USA. First, based in St. Louis, Missouri with limited staff and resources, defending this Alabama suit will be significantly burdensome on Ulrich Medical USA (Exhibit A, ¶45). Second, Alabama has no obvious special interest in adjudicating this suit, when the Frye's reside[6] in Alabama solely because of Mr. Frye's Army transfer.

Third, the Plaintiffs – and Ulrich Medical USA – have an interest in obtaining convenient and effective relief. However, the Plaintiffs could have filed suit in Missouri or Germany, and their response is devoid of any allegation disputing the inconvenience of these venues.

---

[6] From the pleadings, the Plaintiffs' state of citizenship is uncertain. While the Frye's allege that they "reside" in Dale County, they do not allege that they are citizens of the State of Alabama (Complaint, ¶¶1-2).

Finally, judicial economy and furthering fundamental substantive social policies favor adjudication of this case in Germany. The design, manufacture, sale, distribution, and implantation of the ADDplus all occurred in Germany (Exhibit A, ¶27-31). Witnesses and documents relating to the these events – and thus the Plaintiffs' cause of action – are all in Germany. Moreover, Germany has a substantially stronger connection to and interest in ensuring the safe and proper design, manufacture, and sale of medical devices within its borders, as well as ensuring the safe practice of medicine by the physicians that it licenses. In short, even if this Court determines that Ulrich Medical USA possesses minimum contacts with Alabama, the exercise of jurisdiction nevertheless violates due process because doing so fails to comport with "traditional notions of fair play and substantial justice."

## CONCLUSION

For the foregoing reasons, Ulrich Medical USA does not have sufficient minimum contacts with Alabama, and allowing the Plaintiffs to proceed against them "offend[s] traditional notions of fair play and substantial justice." Because this Court does not have personal jurisdiction over Ulrich Medical USA, the Plaintiffs' claims against it are due to be dismissed.

WHEREFORE, PREMISES CONSIDERED, Ulrich Medical USA, Inc. respectfully request that this Court dismiss the Plaintiff's claims in their entirety for a lack of personal jurisdiction.

/s/ Christopher S. Berdy
JAMES B. CARLSON (ASB-7129-S78J)
CHRISTOPHER S. BERDY (ASB-4358-R68C)

Attorneys for Ulrich Medical U.S.A., Inc.

**OF COUNSEL:**

**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
Tel:    (205) 930-5100
Fax:    (205) 930-5101

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleading upon all counsel of record, by United States mail, postage prepaid, and properly addressed on this 1st day of April, 2008 as follows:

Jackson B. Harrison
The Harrison Firm, LLC
8425 Crossland Loop
Montgomery, Alabama 36117

/s/Christopher S. Berdy
OF COUNSEL

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RICHARD EDWARD FRYE and** | ) | |
| **FRAUKE SHEPHARD-FRYE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CIVIL ACTION NO. CV 08-158** |
| **ULRICH GMBH & CO. KG and** | ) | |
| **ULRICH MEDICAL, USA, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**AFFIDAVIT OF MERLE SYMES**

| | |
|---|---|
| **STATE OF MISSOURI** | ) |
| **COUNTY OF ST. LOUIS** | ) |

Before me, the undersigned Notary Public for said County and said State, personally appeared Merle Symes, who, after being duly sworn, testified as follows:

1.    My name is Merle Symes.  I am over the age of nineteen (19) years, of sound mind, and I give this testimony based upon my personal knowledge.

2.    I am the president and CEO of Ulrich Medical USA, Inc. ("Ulrich Medical USA").  I have been president and CEO since late January 2007.

3.    Ulrich Medical USA is a Delaware corporation that was organized and exists under the laws of the State of Delaware.

4.    Ulrich Medical USA was formed in January 2006.

5.    Ulrich Medical USA is a subsidiary of Ulrich GmbH & Co. KG ("Ulrich Gmbh").  Ulrich Medical USA is the exclusive distributor for Ulrich GmbH in the United States.

6.    Ulrich GmbH is located in Ulm, Germany where it designs, manufactures, and distributes surgical spine systems and surgical instruments designed exclusively for implanting its systems.

7.    Ulrich Medical USA only distributes products for Ulrich GmbH that have been approved by the United States Food and Drug Administration ("FDA").

8.    Ulrich Medical USA only sells three FDA-approved surgical spine systems:  (1) obelisc, (2) tangoRS, and (3) VBR.  Ulrich Medical USA also sells surgical instruments designed exclusively for implanting these three products and other spine-related surgical instruments.

9.    Ulrich Medical USA does not design or manufacture any products.  The three systems, and related surgical instruments, sold by Ulrich Medical USA are all designed and manufactured in Ulm, Germany by Ulrich GmbH.

10.    Ulrich Medical USA's only office is located at 754 Spirit 40 Park Drive, St. Louis, Missouri, 63005.  Ulrich Medical USA's office was previously located at 225 Chesterfield Industrial Boulevard, St. Louis, Missouri, 63005.

11.    Since its formation in 2006, Ulrich Medical USA has never maintained an office in Germany.

12.    Since its formation in 2006, Ulrich Medical USA has never employed anyone to sell the ADDplus in Germany.

13.    Ulrich Medical USA has no contacts with the State of Alabama.

14.    Ulrich Medical USA has no offices, factories, real or personal property, product inventory, bank accounts, post office boxes, or other assets of any kind in the State of Alabama.

15.    Ulrich Medical USA has no employees in the State of Alabama.

16.    Ulrich Medical USA does not have a distribution or sales network in the State of Alabama.

17.    Ulrich Medical USA has sold no products to any person or entity in the State of Alabama. Ulrich Medical USA has made no attempts to sell its products to any person or entity in the State of Alabama.

18.    Ulrich Medical USA does not have any customers in the State of Alabama.

19.    No employee Ulrich Medical USA has traveled to the State of Alabama for purposes of selling, marketing, distributing, or attempting to sell, market, or distribute its products in the State of Alabama.

20.    Ulrich Medical USA has not advertised, or placed any advertisements, in the State of Alabama.

21.    Ulrich Medical USA has never been sued or brought suit in the State of Alabama.

22.    Ulrich Medical USA is not registered to do business in the State of Alabama.

23.    Ulrich Medical USA has never purposefully availed itself of any privilege, benefit, or protection afforded by the laws of the State of Alabama.

24.    It is my understanding that Richard Frye, the Plaintiff in this case, had a spinal surgical system called the "ADDplus" implanted in his back. It is my understanding that the procedure for implanting the ADDplus took place in Furth, Germany at the Euromed Clinic on January 23, 2006.

25.    Ulrich Medical USA has no affiliation with or connection to the Euromed Clinic in Furth, Germany.

26.    It is my understanding that Dr. E-M Buchholz performed the surgery in Furth, Germany to implant the ADDplus system in Mr. Frye's back. Dr. E-M Buchholz is not, and never has been, an employee of Ulrich Medical USA.

27.     Ulrich Medical USA does not design, manufacture, sell, distribute, or warrant the ADDplus system described in Mr. Frye's Complaint. Ulrich Medical USA has not ever designed, manufactured, sold, distributed, or warranted the ADDplus system described in Mr. Frye's Complaint.

28.     Ulrich Medical USA did not sell or distribute the ADDplus system to Mr. Frye, as described in his Complaint.

29.     Ulrich Medical USA did not design, manufacture, or warrant the ADDplus system implanted in Mr. Frye, as described in his Complaint.

30.     Ulrich Medical USA did not implant the ADDplus system in Mr. Frye.

31.     The ADDplus system implanted in Mr. Frye was designed, manufactured, and distributed by Ulrich GmbH in Ulm, Germany.

32.     The ADDplus system is not approved by the FDA. The ADDplus is not and never has been distributed in the United States, including the State of Alabama.

33.     It is my understanding that Mr. Frye began having back problems in February 2007, and that Mr. and Mrs. Frye initiated contact with Ulrich GmbH in February or March 2007 as a result of Mr. Frye's supposed problems.

34.     It is my understanding that Mr. Frye had back surgery on March 27, 2007, to explant the ADDplus. In connection with Mr. Frye's surgery, it is my understanding that Mr. and Mrs. Frye, as well as Mr. Frye's physicians, initiated contact with Ulrich GmbH to obtain information about removal of the ADDplus from Mr. Frye's back.

35.     In response to inquiries initiated by the Frye's and Mr. Frye's physicians, it is my understanding that from Germany, Ulrich GmbH supplied Mr. Frye's physicians with specialized surgical instruments to explant the device from his back.

36.     Ulrich Medical USA did not ship or supply those surgical instruments to Alabama.  Ulrich Medical USA did not receive any form of payment or remuneration for the physician's use of the instruments.

37.     In connection with Mr. Frye's March 27, 2007, surgery, no one from Ulrich Medical USA traveled to or entered the State of Alabama to assist with or consult on Mr. Frye's procedure.

38.     Helmut Schoenhoeffer, Ph.D., is Ulrich Medical USA's Vice President of Business Development and Marketing.  Dr. Schoenhoeffer has held that position continuously since late January 2007.  Dr. Schoenhoeffer has extensive knowledge regarding spine surgery and the implantation of spinal systems.

39.     In response to the Frye's inquiries to Ulrich GmbH about Mr. Frye's purported back problems, Dr. Schoenhoeffer was asked to consult with Mr. Frye and his physicians.  Dr. Schoenhoeffer responded to questions initiated by both Mr. Frye and his physicians.

40.     Dr. Schoenhoeffer's correspondence regarding Mr. Frye's March 27, 2007, surgery was in response to inquiries initiated by the Frye's and Mr. Frye's physicians.

41.     In connection with implantation of Mr. Frye's ADDplus, Ulrich Medical USA received no compensation or payment whatsoever.  In consulting with the Frye's and Mr. Frye's physicians for the March 27, 2007, surgery, Ulrich Medical USA received no payment or compensation whatsoever.

42.     No one from Ulrich Medical USA, including Dr. Schoenhoeffer, traveled to the State of Alabama to assist with or consult on Mr. Frye's March 27, 2007, surgery.

43.     During my tenure as president and CEO of Ulrich Medical USA, I have had not contacted, or attempted to contact, Mr. or Mrs. Frye.

44.   In responding to the inquiries initiated by the Frye's and Mr. Frye's physicians, Ulrich Medical USA did not anticipate that it might or would be sued in the State of Alabama.

45.   Ulrich Medical USA has only seven employees.  Requiring Ulrich Medical USA and its limited staff to respond to discovery, to sit for depositions, and to otherwise defend itself in this suit in the State of Alabama will be extremely disruptive to and burdensome on its operations and limited resources.


FURTHER THE AFFIANT SAYETH NOT.

Merle Symes

**STATE OF MISSOURI** )
**COUNTY OF ST. LOUIS** )

I, the undersigned, a Notary Public in and for said County and State, hereby certify that Merle Symes, whose name is signed to the foregoing document and who is known to me, comes before me on this day and, being informed of the contents of such instrument, she executed the same voluntarily on the day the same bears date.

Under my hand and seal this __31__ day of March 2008.

**Eric Chamberlain**
**NOTARY PUBLIC - NOTARY SEAL**
**STATE OF MISSOURI**
**Commission No. 05738521**
**My Commission expires Jul 05, 2009**

NOTARY PUBLIC

My Commission Expires: 7/5/09